ELLIS, Judge.
Plaintiffs herein, who are some of the heirs of Daniel Eads, brought this suit in 1953 under the provisions of R.S. 13:5062, since repealed, claiming title to an undivided one-third interest in approximately 200 acres of land in St. Helena Parish. Defendants are the successors in title of Denkmann Lumber Company, Inc. Mrs. Birdie Eads Clark, one of the children of Daniel Eads, has intervened, claiming an undivided one-sixth interest in the said property. From a judgment dismissing their demand, plaintiffs have appealed. No appeal was taken by intervenor, and the judgment has become final as to her.
The disputed property was acquired by Daniel Eads from the United States by two patents, both dated June 1, 1860. Eads was already the owner of 77.66 acres of land adjacent to the disputed tract. He sold the latter tract to Mrs. Martha J. Everett on November 29, 1870. There is no deed of record whereby Daniel Eades (or Eads) ever conveyed the disputed property to any person.
On June 20, 1876, Mrs. Everett sold both the 77.66 acre tract and the disputed tract to Samuel R. Morgan. On October 14, 1899, G. S. Eads, Mamie Eads, Birdie Eads and Cynthia Eads, four of the six children and heirs of Daniel Eads, who was then deceased, quit claimed their interest in the subject property to Mr. Morgan, stating that it had been inadvertently omitted from the sale to Mrs. Everett.
Morgan sold the disputed property, with other property, to Natalbany Lumber Company, Ltd. on October 26, 1899, by a deed which is entirely regular on its face. Natalbany sold the property, with other property, to Denkmann Lumber Company, Inc. on December 22, 1941, and Denkman transferred to its shareholders on December 1, 1946.
It is clear that Samuel Morgan never acquired the undivided one-third interest claimed by plaintiffs, who are the heirs of the two children of Daniel Eads who did not execute the quit claim to Mr. Morgan. This interest can only have been acquired by defendants by prescription.
Plaintiffs here claim that Natalbany Lumber Company, Ltd. must have been in bad faith when they acquired the property *870 because of the quit claim deed to Morgan executed by some of the Eads heirs. They claim that this must have been obtained by Morgan as the result of a title examination by Natalbany, which would then be bound by all matters of record.
Article 3481 of the Civil Code provides:
“Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it.”
In order to sustain plaintiff’s position, we would have to make the assumption that Natalbany had a title examination made. This fact does not appear affirmatively from the record, and the existence of the quit claim deed, of itself, is not sufficient to overcome the presumption of good faith. It is settled law that a purchaser will not be charged with bad faith because a title examination, if made, would have disclosed defects in the seller’s title. Smith v. Southern Kraft Corporation, 202 La. 1019, 13 So.2d 335 (1943).
We find that Natalbany Lumber Company, Ltd. was a good faith purchaser, since plaintiffs have not borne their burden of proving otherwise.
One may acquire the ownership of an immovable by the acquisitive prescription of ten years by meeting the requirements of Article 3479 of the Civil Code, which provides:
“To acquire the ownership of immova-bles by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
“1. Good faith on the part of the possessor.
“2. A title which shall be legal, and sufficient to transfer the property.
“3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
“4. And finally an object which may be acquired by prescription.”
Since we have already found that Natal-bany was a purchaser in good faith by a deed translative of title, and since immovable property may be the subject of acquisitive prescription under Articles 3472 et seq. of the Civil Code, we need only determine if the possession exercised by Natalbany and its successors in title satisfied the requirements of the Code.
The evidence in the record shows that the taxes on the property have been paid; the property was leased for mineral purposes in 1934, 1949, and 1967; the timber was cut in 1927 and 1948; roads were maintained across the disputed property, and a tramway constructed thereon, the bed of which is still visible. All of the foregoing acts of possession relate specifically to the disputed property. In addition, Natalbany and its successors have maintained the property lines around a much larger tract of which the disputed property forms a part. Because the disputed tract lies on the northerly line of the larger tract in one area, that line was painted, a fire line cut, and concrete markers erected at several corners thereof.
 We think there can be no question that the above acts of possession are sufficient to support a prescriptive title under the acquisitive prescription of ten years. The type of possession necessary to support the prescription of ten years is dependent on the use for which the land is destined. The property in question is timberland and has been possessed as such by defendants and their predecessors for a period far in excess of ten years. See Smith v. Southern Kraft Corporation, supra; Boudreaux v. Olin Industries, 232 La. 405, 94 So.2d 417 (1957).
The judgment appealed from is affirmed, at plaintiffs’ cost.
Affirmed.